LAWRENCE B. JOHNSON and ARDITH M. JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket Nos. 7814-80, 8055-80.
United States Tax Court
T.C. Memo 1983-479; 1983 Tax Ct. Memo LEXIS 308; 46 T.C.M. (CCH) 1084; T.C.M. (RIA) 83479; August 15, 1983. Brett F. Paulsen, for the petitioners. Randy G. Durfee, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Year
Deficiency
1974
$732
1975
940
1976
9,235
These cases have been consolidated for purposes of trial, briefing and opinion. After concessions, the only issue is whether petitioners may exclude from gross income under section 119 [1] the fair rental value of housing provided to petitioner Lawrence Johnson by his employer. All the facts are stipulated and found accordingly. Petitioners resided in Lindon, Utah when they filed their petitions in this case. Fluor Alaska, Inc. *310 (Fluor) undertook to construct the southern terminal of the TransAlaska pipeline. In 1975, Fluor hired petitioner Lawrence Johnson (hereinafter petitioner) to work on the project. The southern terminal of the pipeline was located at Valdez, Alaska. The town itself did not have adequate facilities to house construction workers. Prior to construction of the pipeline, it was a small fishing community with a population of approximately 1,000. Thus, Fluor was forced to develop a housing plan to accommodate its workers. Accordingly, it constructed 30 permanent-type houses and 170 modular-type houses in the area, and leased all available motel rooms. Construction of the housing was completed in the first 20 months of the project. Petitioner arrived in Valdez on March 15, 1975. For the first two months he resided in a motel room leased for him by his employer, and then he moved into one of the modular-type houses. In June 1975, petitioner's wife and family joined him in Valdez. Petitioner's employment continued until it was terminated on July 7, 1977. The terminal itself is located on the southern side of Port Valdez Bay. Due to mountainous terrain surrounding the limited *311 amount of leveled land upon which the terminal was built, construction of housing in the terminal area was unfeasible. Company housing was located on the northern side of Port Valdez Bay. The terminal was 3 miles across the water from petitioner's residence, however, the distance was 12 miles over a roadway which encircled the Bay. There were at least one-half dozen personnel locations, most of which were either north or northeast of the terminal site. A warehouse was located within the northern residential subdivision. Numerous dock warehouses, laydown areas, and rail and pipe yards were located on the northern shore, all of which were used to supply the construction site. Several large offloading sites were also located on the northern shore and one was maintained on the southern shore contiguous to the terminal site. Petitioner was hired as a civil inspector. His duties included not only the inspection of construction at the terminal site but also construction of support facilities which included housing, warehouses, an aggregate screening plant, and an asphalt plant, all located on the northern side of the Bay. Petitioner frequently combined inspections of the housing *312 project with inspections of the other support facilities. In 1975, he inspected the support facilities approximately four to five hours per day and the terminal site three to four hours per day. In 1976, he inspected the support facilities approximately two to three hours per day and the terminal site approximately five to six hours per day. Petitioner prepared some daily inspection reports at his home; others were prepared at work. This was the only employment-related activity which petitioner conducted at his residence. Petitioner's employer included the value of petitioner's lodging in his wages for 1975 and 1976 in the amounts of $4,800 and $6,894, respectively. Petitioner excluded these amounts from his gross income. Section 119 provides that the value of lodging furnished by an employer to an employee is excludible from the employee's gross income if three conditions are met: (1) the lodging is furnished for the employer's convenience; (2) the employee's acceptance of the lodging is required as a condition of employment and (3) the lodging is located on the business premises of the employer. There is no question that the first two conditions are met. Since there *313 was no housing available, it was essential the employer provide housing. Thus, it is apparent the lodging was furnished for the convenience of the employer, Olkjer v. Commissioner,32 T.C. 464, 468 (1959), and by any objective standard, petitioner was required to accept the lodging as a condition of his employment. Sec. 1.119-1(b), Income Tax Regs.; McDonald v. Commissioner,66 T.C. 223, 231 (1976). Indeed, respondent concedes these two points. What respondent argues is that the lodging was not furnished on the "business premises" of the employer. For the following reasons, we agree with respondent. In Van Huff v. Commissioner,T.C. Memo. 1981-30, the taxpayer was employed by the firm which had undertaken to construct the TransAlaska pipeline. As the pipeline neared completion, the taxpayer was hired as an equipment engineer to work at the southern terminal. He was likewise furnished housing in Valdez. In rejecting the taxpayer's assertion that his employer's "business premises" encompassed the entire city of Valdez, we held the business premises was limited to the terminal itself and material receiving points. Petitioners *314 argue their case is distinguishable from Van Huff. Whereas both employers were involved primarily in construction at the terminal site located on the southern shore of Port Valdez Bay, petitioner's employer also constructed housing facilities in the city. Inasmuch as petitioner inspected that housing as part of his job, petitioners argue such housing made up a part of the "business premises" of his employer. However, we find any such differences are not important. The section 119 exclusion is available where lodging is furnished at a place where the employee performs a significant portion of his duties on the premises where the employer conducts a significant portion of his business. McDonald v. Commissioner,supra;Lindeman v. Commissioner,60 T.C. 609, 615 (1973). While it is true that due to existing facilities, the establishment of living quarters was clearly essential, the construction and maintenance of these facilities must be considered ancillary to the main business of constructing the terminal. To conclude that lodging is on the business premises simply because it was constructed by the employer would make the third condition *315 of section 119 meaningless. See Benninghoff v. Commissioner,71 T.C. 216, 221 (1978), affd. 614 F.2d 398 (5th Cir. 1980). The property must bear an integral relationship to the business activities of the employer. Here, no significant employer activities occurred at petitioner's residence. It is clear that the preparation of some daily inspection reports at home did not constitute a significant portion of petitioner's duties. See Benninghoff,supra at 220; Van Huff,Supra. Moreover, petitioner's job did not involve any special duties requiring that he live in a particular location. In essence, petitioner is in no different position than the taxpayer in Van Huff. He was provided housing in the same area for the same reason housing was furnished all other workers. We conclude petitioner's lodging was neither provided on the business premises of his employer nor was there an integral relationship between such lodging and his employer's business activities. We find further support for respondent's position in legislation dealing with individuals who work abroad. Due to the extraordinary costs and hardships *316 often incurred in living overseas, Congress has given such individuals special consideration. Former section 911(a) [2]provided an exclusion for income earned by individuals residing in certain foreign camps provided by an employer because satisfactory housing was unavailable. To qualify for the exclusion, the camp, among other things, had to be located, as near as practicable, in the vicinity of the place at which such individual rendered services. Sec. 911(c)(1)(B)(ii). Section 911(c)(7) further provided that in the case of certain electing individuals residing in such a camp, such camp was considered to be part of the business premises of the employer for purposes of excluding the value of meals and lodging under section 119. As stated in the committee reports: The committee's intention in providing special treatment for employees in camps is to extend relief to employees generally located in remote areas where, because of circumstances beyond the control of the employer, the "business premises" requirement of section 119 cannot be met. In order to qualify for the special treatment, the value of the camp housing provided must qualify for exclusion from the employee's income *317 under section 119 in all respects other than location on the business premises of the employer, and the camp must be located, as near as practicable, in the vicinity of the employer's business premises or the place where the taxpayer renders services. [S. Rep. 95-746, 1978-2 C.B. 422, 428-429; H. Rept. 95-1798, 1978-2 C.B. 432, 434.] Of course, these provisions do not apply in the instant case; we do not have a foreign camp. They do point out, however, that where an employer is required to furnish housing because satisfactory housing is not otherwise available, such housing is not necessarily considered to be on the business premises of the employer. Otherwise, section 911(c)(7) would have been unnecessary. [3]
*318 In summary, we find no material difference between the circumstances under which petitioner was furnished housing and the circumstances under which the taxpayer in Van Huff was furnished housing in the same city. Accordingly, we hold for respondent. To reflect concessions, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. The sec. 911 references in the above paragraph were generally effective for taxable years beginning after December 31, 1977, and for taxable years beginning prior to December 31, 1981. See Tax Treatment Extension Act of 1978, sec. 209, Pub. L. 95-615, 92 Stat. 3097, 3109, and Economic Recovery Tax Act of 1981, secs. 111(a) and 113, Pub. L. 97-34, 95 Stat. 172, 190, 195. See note 3, infra.↩
3. In 1981, Congress repealed sec. 911(c)(7) and enacted sec. 119(c) which, in effect, retains the rule that under certain conditions a foreign camp will be considered as part of the business premises of the employer. The new provision differs from prior law primarily in that the camp does not have to be in a hardship area and need not constitute substandard lodging. See Economic Recovery Tax Act of 1981, P.L. 97-34, sec. 113.↩