# United States Tax Court

T.C. Memo. 2023-6

CORY H. SMITH,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 5191-20.                    Filed January 12, 2023.

————————

*Tiffany M. Hunt*, for petitioner.

*Hannah Kate Comfort* and *Moenika N. Coleman*, for respondent.

## MEMORANDUM OPINION

TORO, *Judge*: In this deficiency case, petitioner, Cory H. Smith, challenges the Commissioner of Internal Revenue's determinations that he had deficiencies in tax for the taxable years 2016, 2017, and 2018 (relevant years). After our Opinion in *Smith v. Commissioner*, No. 5191-20, 159 T.C. (Aug. 25, 2022), and a Stipulation of Settled Issues filed by the parties, only one issue remains for decision. We must decide whether, under section 119,[1] Mr. Smith may exclude from gross income the value of lodging his employer provided during the relevant years. In a Motion for Summary Judgment, Mr. Smith argues that the value of the lodging may be excluded. The Commissioner takes the opposite view

———————

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2] in his own Motion for Summary Judgment.  As we will explain, we agree with the Commissioner.

*Background*

The facts below are derived from the pleadings, the parties' Motion papers, their Stipulation of Facts as supplemented, and the Declarations and Exhibits attached thereto.  These facts are stated solely for the purpose of ruling on the motions before us and not as findings of fact in this case.  *See Whistleblower 769-16W v. Commissioner*, 152 T.C. 172, 173 (2019).  Mr. Smith lived in Australia when he filed his Petition.

I.     *Mr. Smith's Employment with Raytheon*

Mr. Smith is an Air Force veteran and engineer who, in September 2009, received an offer of employment from the Raytheon Company, a private defense contractor, to work as an engineer at the Joint Defense Facility at Pine Gap, Alice Springs, Northern Territory, Australia (Pine Gap).[2]  He ultimately accepted the offer.

While waiting to move to Australia, Mr. Smith received a copy of Raytheon's Australian Operations Overseas Handbook.  The handbook informed Mr. Smith that he was eligible for housing in Alice Springs.  In relevant part, the handbook read:

5.1     GENERAL

All employees transferred to Alice Springs on the O&M Program are provided good quality [Pine Gap] housing.  The employee is responsible for IRS taxable income on the local market rental value of furnished housing and the associated utilities.  Additional information on the tax impact of [Pine Gap] housing can be found in the *Taxes* section elsewhere in this *Handbook*.

The handbook further informed Mr. Smith of an alternative housing assistance option.

---

[2] For additional background regarding Pine Gap and Mr. Smith's employment there, see *Smith*, 159 T.C., slip op. at 2–16.

**[*3]**  5.3  HOUSING ASSISTANCE – ALTERNATE TO [PINE GAP] HOUSING

> Raytheon will provide a payment to an employee eligible for [Pine Gap] housing to compensate him or her for general costs associated with owning or renting non-[Pine Gap] housing.  The actual amount of the allowance will be based upon the U.S. Department of State calculation of the Living Quarters Allowance (Group 3) for Alice Springs.  Current Housing Assistance rates can be obtained from the Alice Springs Administration office.

The handbook stated that "[a] current employee residing in [Pine Gap] housing" is eligible for alternate housing assistance "after first relinquishing their [Pine Gap] accommodation."  Mr. Smith believed that this option was available to him only after moving to Australia and starting his employment with Raytheon.

Regarding the income tax treatment of Mr. Smith's housing, the Raytheon handbook stated as follows:

> 13.2  TAXABLE VALUE OF [PINE GAP] HOUSING

> An employee assigned overseas on this program is provided good quality furnished [Pine Gap] housing at no expense.  Income tax on the value of [Pine Gap] housing and the associated utilities is the responsibility of the employee.

> The value for housing is based on the Northern Territory Housing Commission Rates and is adjusted annually.  The taxable value of housing provided to the employee will be reported via a Form 1099 issued by the U.S. Air Force. . . . The employee should report the amount shown on the 1099 as income on his or her annual tax return.

The closest city to Pine Gap is Alice Springs.  Alice Springs had a population of approximately 28,000 in 2009, housing employees working at Pine Gap and the general public alike.  Raytheon employees working at Pine Gap lived in various neighborhoods throughout Alice Springs.

Mr. Smith learned that he was assigned housing in Alice Springs in August 2010.  Mr. Smith's housing accommodation was U.S.-government housing at Shanahan Close, Alice Springs, Northern Territory (Housing Accommodation).  The Housing Accommodation was

[*4] in a cul-de-sac where other individuals who worked at Pine Gap lived, but on a public street with public access. Mr. Smith was not aware of any non-Pine Gap employees living in the cul-de-sac. The parties have stipulated that the Housing Accommodation "was not located on Raytheon's business premises" in the literal sense, nor was it a "camp" as defined by section 119(c).

Mr. Smith began working for Raytheon and living at the Housing Accommodation in September 2010. All utilities other than telephone service were provided at no cost to Mr. Smith. In addition, Pine Gap provided or arranged for maintenance and trash removal services at no cost.

Mr. Smith reported to work at a building on Hatt Road, Hugh, Northern Territory. Mr. Smith's Housing Accommodation was approximately 11 miles from his place of work. Mr. Smith also performed some work from home. For example, he completed training programs at home, maintained his time sheets, and completed employee evaluations. The training programs were in part voluntary and in part mandatory. Raytheon provided Mr. Smith with a key fob, also known as a hardware token, enabling him to remotely access its secured network from outside the workplace.[3] If any U.S. or foreign visitors stayed with Mr. Smith, he was required to alert the Pine Gap Security Office.

After residing at the Housing Accommodation for nearly eight years, in September 2018, Mr. Smith had to move out and find housing on his own because Pine Gap ceased to provide housing.

II.  *Mr. Smith's Tax Reporting*

For each of the relevant years, Mr. Smith received from the Secretary of the Air Force a Form 1099–MISC, Miscellaneous Income, reporting as nonemployee compensation the value of his Housing Accommodation. The amounts reported to Mr. Smith for 2016, 2017, and 2018 were $15,889, $15,501, and $10,015, respectively.

Mr. Smith prepared his own Forms 1040, U.S. Individual Income Tax Return, for the taxable years 2016 and 2017. He timely filed those

---

[3] The Commissioner disputes whether the key fob in fact enabled Mr. Smith to access Raytheon's network from home, as well as whether Mr. Smith ever used the key fob for that purpose. For purposes of deciding the Commissioner's Motion, we construe this fact in the light most favorable to Mr. Smith.

**[\*5]** returns reporting, in relevant part, gross receipts of \$15,889 for 2016 and \$15,501 for 2017 on Schedule C–EZ, Net Profit From Business. These amounts represented the value of Mr. Smith's Housing Accommodation as reported by the Secretary of the Air Force on Forms 1099–MISC.

The Commissioner later received Forms 1040–X, Amended U.S. Individual Income Tax Return, for Mr. Smith's taxable years 2016 and 2017, accompanied by revised Forms 1040. The amended returns and revised Forms 1040 were filed by a preparer in the United States.[4] In the returns, Mr. Smith again reported as gross receipts the value of the Housing Accommodation shown on the Forms 1099–MISC for 2016 and 2017 (\$15,889 and \$15,501, respectively). But Mr. Smith also claimed corresponding deductions for "employee benefit programs" in amounts equal to the value of the Housing Accommodation, which had the effect of excluding the value of the Housing Accommodation from his gross income.

Mr. Smith's U.S. federal income tax return for the taxable year 2018 was timely filed by the preparer who filed his amended returns for 2016 and 2017. As in those returns, Mr. Smith reported in his 2018 return gross receipts equal to the value of his Housing Accommodation reflected on Form 1099–MISC (\$10,015) and then claimed a corresponding deduction for employee benefit programs, which again had the effect of excluding the value of the Housing Accommodation from his gross income.

After conducting an examination, the Commissioner issued Mr. Smith a notice of deficiency for the relevant years. In addition to other determinations no longer at issue, the Commissioner disallowed the deductions Mr. Smith claimed for employee benefit programs for each of the relevant years.

Mr. Smith timely petitioned our Court for redetermination of the deficiencies. On November 4, 2022, both parties moved for summary

---

[4] Mr. Smith did not sign the amended returns, which were prepared by John Anthony Castro. Rather, Mr. Smith's counsel, Tiffany Michelle Hunt, who also represents Mr. Smith in this case, signed the returns on the lines designated for the taxpayer's signature. The returns were not accompanied by a Form 2848, Power of Attorney and Declaration of Representative, as required by Treasury Regulation § 1.6012-1(a)(5) and the Statement of Procedural Rules, 26 C.F.R. § 601.504(a)(6). The IRS rejected them on that basis, and Mr. Smith then ratified the amended returns and refiled them. *See also Smith*, 159 T.C., slip op. at 16 n.20.

[*6] judgment on the issue now before the Court. The parties filed Responses on November 18, 2022, and Replies on November 29, 2022.

*Discussion*

I.    *Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the adverse party. *Sundstrand Corp.*, 98 T.C. at 520.

II.    *Section 119*

Gross income generally includes all income from whatever source derived, including compensation for services. I.R.C. § 61(a). An employee, however, may be able to exclude the value of lodging provided by the employer if certain conditions are met. I.R.C. § 119(a). Namely, (1) the lodging must be "furnished on the business premises of the employer," (2) the lodging must be "furnished for the convenience of the employer," and (3) the employee must be "required to accept such lodging as a condition of his employment." Treas. Reg. § 1.119-1(b); *see Vanicek v. Commissioner*, 85 T.C. 731, 737–38 (1985).

The Commissioner argues that Mr. Smith fails to meet all three conditions. Mr. Smith, on the other hand, argues that he satisfies all three and appears to suggest that the Commissioner should be precluded from addressing the second and third conditions because they were not challenged in the notice of deficiency or in the pleadings. We are skeptical of Mr. Smith's preclusion argument; but, because we agree with the Commissioner that Mr. Smith fails to meet the first condition, we need not address the preclusion point further.[5] *See Dole v.*

---

[5] We also need not address Mr. Smith's arguments that the lodging was furnished for Raytheon's convenience and that he was required to accept the lodging as a condition of his employment. We note, however, that the latter point seems particularly difficult to maintain in light of section 5.3 of the Raytheon handbook,

[*7] *Commissioner*, 43 T.C. 697, 705 (1965) ("[The taxpayers'] failure . . . to meet any one of [the three requirements of section 119] will cause the value of the lodging to be includable in their gross income."), *aff'd per curiam*, 351 F.2d 308 (1st Cir. 1965).

### A.    *Condition 1: Business Premises of the Employer*

The phrase "'on the business premises' has been the subject of extensive judicial interpretation . . . [and] [a]lthough the application of these interpretations [has] at times produced varying results, the principles laid down with respect to this issue have been fairly uniform." *Benninghoff v. Commissioner*, 71 T.C. 216, 219–20 (1978), *aff'd*, 614 F.2d 398 (5th Cir. 1980). The "business premises of the employer" generally means the employee's "place of employment." Treas. Reg. § 1.119-1(c)(1). And as our Court has explained before:

> Lodging is considered located "on the business premises of the employer" if such lodging is furnished at a place where the employee performs a significant portion of his duties or on the premises where the employer conducts a significant portion of his business. *McDonald v. Commissioner*, 66 T.C. 223, 230 (1976). We have also held that lodging is located on the business premises of the employer if (1) the living quarters constitute an integral part of the business property or (2) the company carries on some of its business activities there. *Dole v. Commissioner*, 43 T.C. 697, 707 (1965) . . . . The extent or boundaries of the business premises in each case is a factual question whose resolution follows a consideration of the employee's duties as well as the nature of the employer's business. *Lindeman v. Commissioner*, 60 T.C. 609 (1973). "The touchstone of the business premises test is the lodging's relationship to the business activities of the employer."

---

which gives employees the option of receiving a housing stipend in lieu of Pine Gap housing. *See, e.g.*, Treas. Reg. § 1.119-1(e) ("If [an] employee has an option to receive additional compensation in lieu of . . . lodging in kind, the value of such . . . lodging is not excludable from gross income under section 119."). *Compare* Treas. Reg. § 1.119-1(f) (example 5) (concluding that the value of lodging provided to a state civil servant was excludable when the lodging was provided at the employer institution and the civil servant was required to be available for duty at all times), *with* Treas. Reg. § 1.119-1(f) (example 6) (concluding that the value of lodging provided to an employee was not excludable because the employee could have chosen to reside elsewhere and receive a cash allowance).

**[\*8]**    That is, "[t]he property must bear an integral relationship to the business activities of the employer." *Benninghoff v. Commissioner*, *supra* at 221.

*Vanicek*, 85 T.C. at 739–40.

Our Court has previously applied these principles to determine whether off-base housing provided to contractors working at Pine Gap was "on the business premises of [the] employer" within the meaning of section 119.[6]  *See Middleton v. Commissioner*, T.C. Memo. 2008-150, 2008 WL 2369250; *Hargrove v. Commissioner*, T.C. Memo. 2006-159, 2006 WL 2280631.  In each case, we decided it was not.  In *Hargrove v. Commissioner*, 2006 WL 2280631, at \*4, for example, we held that the housing provided to a contractor working at Pine Gap was not on the employer's business premises when (1) like the housing here, it was in Alice Springs miles away from the base on publicly accessible roads in an ungated area and (2) neither the employer nor the taxpayer performed work there.  In *Middleton v. Commissioner*, 2008 WL 2369250, at \*6, we considered nearly identical facts and reached the same conclusion.

B.    *Application to Mr. Smith*

The cases cited above would seem to be dispositive here. Nevertheless, Mr. Smith argues that his Housing Accommodation should be considered Raytheon's business premises because it bore "an integral relationship to the business activities of [Raytheon]."  Pet'r's Mot. Summ. J. ¶ 63.  More specifically, Mr. Smith contends that this case should be decided differently from *Hargrove* and *Middleton* for four material reasons.

First, Mr. Smith alleges that his Housing Accommodation allowed Raytheon to monitor his behavior and protect national security information.  Second, he states that Raytheon, through Pine Gap, "maintained extensive control over [his] assigned hous[ing]" by, for example, providing all maintenance, repairs, and trash removal services, using the home to communicate information to him upon his initial arrival there, requiring him to report foreign visitors, and

---

[6] As already discussed, the parties agree that Pine Gap is not a "camp" within the meaning of section 119(c).

[*9] regulating who could live in his housing.[7] Pet'r's Mot. Summ. J. ¶ 93. Third, he notes that, while located on public roads, his Housing Accommodation was in a cul-de-sac where other Pine Gap employees lived.[8] And fourth, Mr. Smith points out that he completed some work from his Housing Accommodation, including completing training programs, time sheets, and employee evaluations, and was provided with a token that he could use to remotely access Raytheon's secure network.

We find Mr. Smith's efforts to distinguish this case from our prior authorities unpersuasive. Reviewing the facts in the light most favorable to Mr. Smith, we conclude that his activities at the Housing Accommodation were not significant enough to show that it was "integral" to Raytheon's business, *see Benninghoff*, 71 T.C. at 221, or "part and parcel" of Raytheon's workplace—Pine Gap, *see Lindeman*, 60 T.C. at 615. *Compare McDonald*, 66 T.C. at 230–31 (concluding that the value of lodging was not excludable when "the only business activities conducted by [the taxpayer] . . . in his residence were the occasional entertainment of business guests and the periodic use of the telephone to place or receive business calls"), *with Lindeman*, 60 T.C. at 615–16 (concluding that a hotel manager's residence was an integral part of the employer's business when the manager could observe the hotel from the residence, worked evenings from the residence and was connected to the hotel's switchboard there, and occasionally entertained hotel guests in the residence).[9] Mr. Smith did not require immediate access to Pine Gap

---

[7] To the extent Mr. Smith argues that Raytheon should be viewed as constructively owning the Housing Accommodation and that such constructive ownership makes the Housing Accommodation Raytheon's business premises, our Court has previously rejected that position. *See Benninghoff*, 71 T.C. at 221 ("To conclude that lodging is on the business premises of the employer merely because it is owned by the employer would make the [business premises] condition of section 119 meaningless. The property must bear an integral relationship to the business activities of the employer."). Mr. Smith appears to acknowledge this point in his Motion. *See* Pet'r's Mot. Summ. J. ¶¶ 51, 93.

[8] The parties dispute whether individuals unaffiliated with Pine Gap also lived in the cul-de-sac, but this point does not affect our conclusion.

[9] *See also Egger v. Commissioner*, T.C. Memo. 1987-478, 1987 WL 45429 (lodging provided to employee of a defense contractor working at a military base in Saudi Arabia was not on the employer's business premises despite being owned and maintained by the defense contractor); *Johnson v. Commissioner*, T.C. Memo. 1983-479, 1983 Tax Ct. Memo LEXIS 308, at *7–8 (housing provided to civil inspector for construction company was not on the business premises under section 119 when the only work performed from the housing was preparing "some daily inspection reports"

**[\*10]** "at all hours" to perform his job, and his Housing Accommodation did not in fact provide immediate access. *See Lindeman*, 60 T.C. at 616. Nor do any facts show that Mr. Smith performed significant work from his Housing Accommodation, that the Housing Accommodation was in some way necessary for the performance of his duties, or that it served an important function on behalf of the business. *Compare Adams v. United States*, 218 Ct. Cl. 322, 333 (1978) (finding that a CEO's residence "was closely identified with [his employer's] business interests and was used to advance those interests"), *with McDonald*, 66 T.C. at 230–31 (reaching a contrary conclusion with respect to another executive's residence). Completing some trainings, time sheets, and evaluations from home "do[es] not constitute the requisite quantum or quality of activities to qualify as the 'significant portion' prescribed by both alternative constructions of 'on the business premises.'" *McDonald*, 66 T.C. at 231. And while (as we assume for purposes of ruling on the Commissioner's Motion) Mr. Smith was given a key fob to access Raytheon's secured network remotely, the existence of the key fob does not convert otherwise insignificant work to significant.

III.    *Conclusion*

For the reasons discussed above, Mr. Smith's Housing Accommodation did not meet the requirements of section 119. Therefore, Mr. Smith is not eligible to exclude from his gross income for each relevant year the value of his Housing Accommodation as reported by the Secretary of the Air Force on Forms 1099–MISC for those years. Accordingly, we will grant the Commissioner's Motion for Summary Judgment and deny Mr. Smith's Motion.

To reflect the foregoing,

*An appropriate order will be issued, and decision will be entered under Rule 155.*

---

and when his "job did not involve any special duties requiring that he live in a particular location").